UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                                     Criminal Action No. 12-20246

vs.                                               HON. MARK A. GOLDSMITH

OTIS K. POWELL, III,

    Defendant.
_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. 17) AND GRANTING
DEFENDANT'S MOTION FOR WITNESS LIST (DKT. 16)**

## I.    INTRODUCTION

Defendant Otis K. Powell, III is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 9). Defendant filed a motion to suppress statements and evidence, including the firearm that is the basis of the indictment. Def. Mot. to Supp. (Dkt 17). The motion claims that the statements and evidence were obtained in the course of an unconstitutional traffic stop. Id. ¶¶ 2-3. The government filed a response (Dkt. 23), and on October 3, 2012, the Court conducted an evidentiary hearing. At the hearing, the Court asked for briefing on the issue of whether a police officer's observation of a vehicle briefly crossing the double yellow traffic line would justify a traffic stop under United States v. Freeman, 209 F.3d 464 (6th Cir. 2000), a decision addressing a traffic stop in similar circumstances. Each party filed a supplemental brief on this issue (Dkts. 28, 32).

The Court concludes that a police officer's observation of a vehicle crossing the double

yellow center line supports a probable cause finding that a traffic violation has taken place, under Michigan law, thereby justifying a traffic stop. Further, in our case, the preponderance of the evidence supports a finding that the officers observed the car in which Defendant was a passenger cross over a double yellow line lane divider, thereby justifying a stop of the vehicle. The Court will, therefore, deny Defendant's motion to suppress.

Defendant also filed a motion seeking to compel the government to disclose, at least 21 days before trial, a list of witnesses the government intends to call at trial. (Dkt. 16.) The government filed a response and brief in opposition. (Dkt. 22.) The Court concludes that the government did not present countervailing considerations that would outweigh Defendant's interest in receiving a witness list before trial. The Court will grant Defendant's motion for disclosure of the witness list.

## II. BACKGROUND

On April 24, 2012, at around 11:30 p.m., Michigan Department of State Police Troopers Patrick Roti and Jasen Sack were patrolling in a marked police car in the City of Flint. Tr. at 6, 7 (Dkt. 33). The troopers were facing westbound on Pasadena Avenue, near the intersection of Pasadena and Fleming Road. Id. at 7. The troopers observed a black 1998 Oldsmobile car turn from southbound Fleming Road onto westbound Pasadena Avenue. Id. The troopers claimed that the vehicle, shortly after completing its turn, crossed over the double yellow traffic line on Pasadena. Id. at 7, 35. The troopers activated their emergency lights and effectuated a traffic stop; the video recorder in the police car was not functioning, so it did not record the traffic stop. Id. at 8, 21. The vehicle came to a stop on Trumbull Road, less than a block north of Pasadena. Id. at 8, 63.

The troopers exited the police vehicle, and Trooper Roti made contact with the driver,

Shawn Fleming. Id. at 12. Fleming had drug paraphernalia on his lap. Id. at 12, 67. Trooper Roti took Fleming into custody, did a LIEN check on Fleming, and released him after determining there were no warrants for him. Id. at 14.

Trooper Sack made contact with the passenger of the vehicle, Defendant Otis Powell. Trooper Sack noticed the smell of marijuana in the car and asked Defendant to step out of the vehicle. Id. at 35-36. Trooper Sack stated:

> At that time I asked Mr. Powell to step from the vehicle and he's stepped out, I asked him if he had anything on him that I needed to be aware of. At that time he stated he had a gun on him. I asked him if he had a permit for that gun or a CPL license, carry pistol license and he stated he did not so at that time I placed him in handcuffs for further investigation into the smell of marijuana and the handgun that was on him.

Id. The troopers brought Defendant to the Flint State Police post to conduct a formal interview.

The troopers noted in the police report they prepared of this incident that the vehicle crossed the double yellow center line. Id. at 30. Trooper Roti stated that he could not remember how much of the car crossed the center line. Id. at 16. Trooper Sack stated that a quarter of the car crossed the double yellow center line into the left turn lane going the opposite way on Pasadena, and that the car traveled one to two-and-a-half car lengths while crossing the center line. Id. at 43, 46. Trooper Sack did not recall how much traffic was in the area at the time. Id. at 46. The troopers did not give Fleming a traffic citation. Id. at 30.

Fleming testified that he saw the police following his car after he turned onto Pasadena. Id. at 59. He testified that he looked at the police car in his rearview mirror as they were following him. Id. at 77. He stated that after he turned onto Trumbull, he saw the police car activate its lights. Id. Fleming further testified that he did not at any point cross the double yellow center line. Id. at 61. He also testified that he had smoked marijuana earlier that day, id. at 68, but that it had no effect on his driving. Id. at 73. Fleming has a driver's permit and not a

3

driver's license, id. at 79, and he has been driving since around age 13. Id. at 81. Fleming also testified that Defendant was "like [Fleming's] brother," id. at 54, and that Fleming wanted to help out Defendant. Id. at 66.

### III. ANALYSIS

**A. Motion to Suppress**

At a suppression hearing, the government has the burden of demonstrating, by a preponderance of the evidence, that the search or seizure was not a constitutional violation. See United States v. Bradley, 163 F. App'x 353, 357 (6th Cir. 2005) (citation omitted).

Stopping a vehicle and detaining its occupants is a seizure within the meaning of the Fourth Amendment, even if the detention is brief. Delaware v. Prouse, 440 U.S. 648, 653 (1979). A police officer may legally stop a vehicle if he has probable cause to believe that the driver has committed a civil infraction. United States v. Torres-Ramos, 536 F.3d 542, 550 (6th Cir. 2008). Probable cause is a "reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). A determination of probable cause is based on a "realistic assessment of the situation from a law enforcement officer's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993).

In support of his motion to suppress, Defendant contends that "the police did not have sufficient probable cause to believe that a civil infraction had been committed, and the traffic stop was effectuated in violation of the Fourth Amendment . . . ." Mot. at 2 (Dkt. 17). The government argues in response that the troopers' "firsthand observation of the vehicle's improper lane usage is a legally sufficient basis upon which to make a traffic stop." Resp. at 3 (Dkt. 23). The government further contends that the traffic stop was valid, notwithstanding United States v.

Freeman, 209 F.3d 464 (6th Cir. 2000). Gov't Supp. Br. at 1 (Dkt. 28). The government argues that a police officer may make a traffic stop of a motorist for any traffic infraction. Id. The government distinguishes Freeman, arguing that the Michigan traffic law at issue here is substantially different from the Tennessee traffic law at issue in Freeman, and that Freeman is also distinguishable on its facts. Id. at 3-4. Finally, the government contends that irrespective of the holding in Freeman, the Sixth Circuit has established that police officers may stop vehicles for any traffic infraction, no matter how slight. Id. at 4.

In Defendant's supplemental brief, he argues that the traffic stop in this case was a subterfuge to justify the search of the vehicle. Def. Supp. Br. at 1 (Dkt. 32). Defendant contends that the troopers' testimony indicates that the vehicle crossed the center line for only a short period of time, and that under Freeman, this does not constitute probable cause of a traffic offense. Id. at 2-3.

The Court concludes that the troopers, having observed the vehicle in which Defendant was a passenger cross the dividing center line, were justified in conducting the traffic stop at issue. The Court reaches this conclusion, however, on different grounds than those proposed by the government.

The government contends that a vehicle crossing the center line of a roadway violates the following provision of the Michigan Traffic Code:

> (1) When a roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent with this act shall apply:
> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety. Upon a roadway with 4 or more lanes which provides for 2-way movement of traffic, a vehicle shall be driven within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn.

Mich. Comp. Laws § 257.642(1)(a). Specifically, the government argues that, for the purposes of the instant case, the pertinent language in the Michigan law states that a vehicle "shall not cross the center line of the roadway except where making a left turn." Gov't Supp. Br. at 3.

The Court disagrees. The full sentence of the provision states, "<u>Upon a roadway with 4 or more lanes which provides for 2-way movement of traffic</u>, a vehicle shall be driven within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn." Mich. Comp. Laws § 257.642(1)(a) (emphasis added). The roadway in this case, the stretch of Pasadena Avenue between Fleming Road and Trumbull Avenue, contains only two lanes, or three if one includes the left-turn lane on eastbound Pasadena. Gov't Ex. A. Therefore, because the roadway in the instant case does not contain four or more lanes, the provision that a vehicle "shall not cross the center line of the roadway except where making a left turn" is inapplicable.

However, the Court concludes that a vehicle crossing the double center line of a road with two or more lanes is, nevertheless, a violation of the Michigan Traffic Code. The relevant provision of the Michigan Traffic Code states, "Upon each roadway of sufficient width, the driver of a vehicle shall drive the vehicle upon the right half of the roadway . . . ." Mich. Comp. Laws § 257.634(1). A violation of this provision is a civil infraction. Mich. Comp. Laws § 257.634(4).

The violation of a similarly worded statute led the Sixth Circuit to uphold a search pursuant to a traffic stop in <u>United States v. Davis</u>, No. 11-4108, 2012 WL 5200368 (6th Cir. Oct. 23, 2012). In that case, the Sixth Circuit held that there was "probable cause to believe that [Defendant] had committed a traffic violation because the two officers who stopped her vehicle . . . testified that they saw [Defendant's] vehicle cross the double yellow line into oncoming

traffic and almost strike another vehicle." Id. at *1 (citing Ohio Rev. Code § 4511.25(A)). The provision of the Ohio code that was violated by the defendant in Davis states: "[u]pon all roadways of sufficient width, a vehicle . . . shall be driven upon the right half of the roadway . . . ." Ohio Rev. Code § 4511.25(A). Because the provision of the Michigan law governing driving on the right-hand side of the road contains language almost identical to that of the Ohio law, under the reasoning in Davis, an officer's observation of a vehicle crossing the double yellow center line and into the opposing traffic lane constitutes probable cause of a traffic violation under the Michigan Traffic Code.

In light of the above analysis, the Court concludes that Freeman is distinguishable. In Freeman, a police officer stopped a motor home after allegedly observing the vehicle cross the line separating the right-hand lane from the emergency traffic lane. 209 F.3d at 465. The Tennessee traffic law provided that a vehicle "shall be driven nearly as practicable entirely within a single lane." Id. The defendant filed a motion to suppress the results of the vehicular search, arguing that the officer lacked probable cause to stop the vehicle. Id. at 466. The court held that "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time" did not constitute a failure to "keep the vehicle within a single lane 'as nearly as practicable,'" and therefore was "insufficient to give rise to probable cause of a traffic violation . . . ." Id.

Freeman is distinguishable from this case because the language of the governing traffic law in Freeman is substantially different from the traffic code provision governing this case. The "nearly as practicable" language in Freeman is far less definitive than the Michigan traffic code provision requiring a vehicle to be driven on the right side of the road. As construed by the Freeman court, the Tennessee traffic code provision allows for some circumstances in which a

7

vehicle may veer outside its lane and still not violate that provision of the traffic code. However, the Michigan statute at issue here contains no such leeway – it states that a driver "shall drive the vehicle upon the right half of the roadway," subject to enumerated exceptions not applicable to this case.[1]

Aside from the difference in the statutes involved, the facts of Freeman are significantly different. When, as here, a vehicle crosses the double yellow center line into an opposing traffic lane – even for a mere instant in time – there is a significant danger of a head-on collision, posing a risk of harm both to the driver of the vehicle crossing the center line and to drivers in the opposing traffic lane. There is no comparable risk of harm that arises from veering over the right-hand emergency line of a traffic lane. See United States v. Page, 154 F. Supp. 2d 1320, 1326 (M.D. Tenn. 2001) (distinguishing Freeman on the grounds that the defendant in Page "partially left his lane several times in a short distance, and in doing so crossed the center line into the lane of on-coming traffic."). Thus the potential danger from the traffic violation here

---

[1] The exceptions are as follows:

> (a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing that movement.
>
> (b) When the right half of a roadway is closed to traffic while under construction or repair or when an obstruction exists making it necessary to drive to the left of the center of the highway. A driver who is driving on the left half of a roadway under this subdivision shall yield the right-of-way to an oncoming vehicle traveling in the proper direction upon the unobstructed portion of the roadway.
>
> (c) When a vehicle operated by a state agency or a local authority or an agent of a state agency or local authority is engaged in work on the roadway.
>
> (d) Upon a roadway divided into 3 marked lanes for traffic under the rules applicable on the roadway.

Mich. Comp. Laws § 257.634(1).

confirms the reasonableness of an officer's stopping the vehicle.

In sum, for the reasons stated above, it is a violation of the Michigan Traffic Code for a vehicle to cross the double yellow center line of the roadway, and an officer observing a vehicle crossing the center line has probable cause to effect a traffic stop of the vehicle. See Davis, 2012 WL 5200368, at *1. Furthermore, "police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008) (citations and quotation marks omitted). Therefore, if the troopers observed the vehicle in which Defendant was riding cross the center yellow line, the troopers were justified in stopping the vehicle – even if, as Defendant contends, the officer's real purpose was a hope of locating contraband in the vehicle.

The Court concludes that the preponderance of the evidence supports a finding that the vehicle crossed the double yellow line on Pasadena Avenue. The troopers both testified that the vehicle crossed the double yellow line for a short time, and the troopers noted this in their police report of the incident. The fact that Trooper Roti could not recall how much of the car crossed the double yellow line, and the fact that Trooper Sack did not remember how much traffic was in the area at the time, does not discredit their testimony. A witness's inability to remember every detail of an incident does not necessarily implicate the truthfulness of his account regarding what he does remember. Furthermore, the credibility of Fleming's testimony is lessened by his close connection to Defendant and his desire to help Defendant.

Finally, Fleming's admissions that (i) he had smoked marijuana earlier that day, and (ii) he had taken his eyes off the road to observe the police car in the rearview mirror while he was driving down Pasadena, support the finding that he briefly crossed the center line while on

Pasadena. Both the marijuana and the look in the rearview mirror may have impacted Fleming's ability to keep the car in one lane. Because the preponderance of the evidence supports a finding that the vehicle crossed the double yellow center line, the troopers had probable cause of a civil traffic infraction sufficient to warrant a traffic stop. Therefore, the Court will deny Defendant's motion to suppress.

### B. Motion for Witness List

Generally, "a defendant is not entitled to a list of the names . . . of the government's witnesses." United States v. Davis, 306 F.3d 398, 420 (6th Cir. 2002). However, "the district court has discretion to order the prosecution to produce it." United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (per curiam).

Defendant moves for the Court to order the government to provide a witness list "sufficiently in advance of trial" so that Defendant can (i) effectively prepare for cross-examination and (ii) identify, locate, and subpoena witnesses who may be able to provide rebuttal or impeachment testimony. Mot. at 1 (Dkt. 16). Defendant argues that receiving a witness list prior to trial eliminates the need to interrupt trial for Defendant to seek impeachment information. Id. The government responds that the motion should be denied because (i) the government has no obligation to identify witnesses before trial, Resp. at 1 (Dkt. 22), and (ii) Defendant has already received discovery from the government with the "identities of a number of potential government witnesses." Id. at 2.

As a general matter, courts weigh the interests of a defendant in receiving the witness list against the government's countervailing interest in keeping the witness information undisclosed. In balancing these interests, courts have considered the following factors: (i) whether disclosure of the witness list would expedite trial and facilitate docket control, see United States v. Jackson,

508 F.2d 1001, 1007 (7th Cir. 1975); (ii) whether disclosure would cause a security issue for the government witnesses, see United States v. Watson, 787 F. Supp. 2d 667, 674-675 (E.D. Mich. 2011); (iii) the amount of time the defendant already had to research potential witnesses and prepare for investigation, see United States v. Williams, No. 06-CR-20411, 2010 WL 272082, at *2 (E.D. Mich. Jan. 15, 2010); and (iv) whether the government previously turned over information with the identities of government witnesses. See Watson, 787 F. Supp. 2d at 674.

For example, in Watson, this Court considered the issue of witness security in relation to a motion for witness list. The Court ordered the government to provide a witness list at least ten days before trial, but stated, "[s]hould there be a security reason for withholding a name from the witness list, the government may move for a protective order within 72 hours of the issuance of this Opinion and Order." Id. at 674-675. This Court also stated that "[g]iven that the government has agreed to turn over considerable materials that would identify witnesses ten days before trial, there does not appear to be any reason for withholding the names of witnesses at that point in time." Id. at 674.

In Williams, the district court stated that "[t]his is a homicide case where the stakes are high . . . . Defendants have not put forward a compelling need for the witness list that would justify putting potential witnesses in danger." 2010 WL 272082, at *2. The court also stated that because the case had been "pending longer than most criminal trials . . . . Defendants have had ample time to investigate potential witnesses and prepare an examination of these witnesses." Id. Finally, in Jackson, the district judge had been reassigned several pending trials. The judge ordered the government to produce its witness list in order to facilitate docket control, expedite the trial, and ensure that potential jurors were not acquainted with the witnesses. 508 F.2d at 1007.

Regarding the instant motion, the Court notes that Defendant has an interest in receiving the government witness list so that he does not needlessly expend time and resources preparing cross-examinations against all possible witnesses identified in the government's discovery materials. Unlike in Williams, Defendant did not have an unusually long period of time in which to prepare for trial. In addition, since the government has already turned over discovery information that identifies potential witnesses, there does not appear to be a reason to withhold the witness names up to the start of trial. See Watson, 787 F.Supp.2d at 674. The government also did not raise an issue of witness security, nor did it present other countervailing considerations that would weigh against disclosure of the witness list. Therefore, although there is no particular need to expedite trial or facilitate docket control for this case, the other factors discussed above weigh in favor of ordering the government to produce a witness list.

Defendant seeks the witness list at least 21 days before trial. The Court concludes that disclosure of the witness list at least 21 days before trial is reasonable. That timeframe does not appear to be out of line with orders in other cases. See, e.g., Jackson, 508 F.2d at 1006 (district court ordered witness lists be served approximately three months before trial); United States v. West, No. 08-CR-669, 2010 WL 2293392, at *5 (N.D. Ill. Jun. 2, 2010) (ordering witness lists be served fourteen days before trial). Furthermore, a federal court may look to local state practice to fashion a reasonable timeframe for serving witness lists. See United States v. Zhuta, No. 09-CR-357A, 2011 WL 1330855, at *1 (W.D.N.Y. April 6, 2011) (referring to local practice that required disclosure 30 days before trial). Michigan law requires the prosecuting attorney to "send to the defendant . . . a list of the witnesses the prosecuting attorney intends to produce at trial" at least 30 days before trial. Mich. Comp. Laws § 767.40a(3). Defendant's request is, therefore, consistent with local state practice. For these reasons, the Court grants Defendant's

motion for government production of a witness list at least 21 days before trial.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to suppress (Dkt. 17) and grants Defendant's motion for disclosure of the government's witness list (Dkt. 16).

SO ORDERED.

Dated: December 7, 2012　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Flint, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2012.

　　　　　　　　　　　　　　　　　　　　　　 s/Deborah J. Goltz
　　　　　　　　　　　　　　　　　　　　　　 DEBORAH J. GOLTZ
　　　　　　　　　　　　　　　　　　　　　　 Case Manager